Christopher Q. Pham, SBN: 206697
E-mail: cpham@criterioncounsel.com
Marcus F. Chaney, SBN: 245227
E-mail: mchaney@criterioncounsel.com
CRITERION COUNSEL, LAW CORPORATION
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone: (818) 888-7540
Facsimile: (818) 888-7544

Attorneys for Plaintiff
BOSE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BOSE CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MEGA FULLER CORP., a California Corporation; et al.<br><br>Defendants. | Case No.: 2:25-cv-11493 JAK (MARx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT BY THE COURT AGAINST DEFENDANT MEGA FULLER CORP.**<br><br>**Hearing Date**: October 26, 2026<br>**Time**: 8:30 A.M.<br>**Courtroom**: 10C<br><br>**Judge**: Hon. John A. Kronstadt |

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION** ........................................ 1

**II. PROCEDURAL HISTORY** ........................................ 1

**III. PERTINENT FACTS** ........................................ 2

**A. The Parties** ........................................ 2

**B. Defendant's Infringing Sales on eBay.com and Plaintiff's Cease-and-Desist Notices** ........................................ 2

**IV. SUBJECT MATTER AND PERSONAL JURISDICTION** ........................................ 4

**V. ANALYSIS OF *EITEL* FACTORS** ........................................ 5

**A. Prejudice to Plaintiff** ........................................ 6

**B. Plaintiff's Substantive Trademark Infringement Claim Against Defendant Is Meritorious & Sufficient** ........................................ 6

**1. Plaintiff's ownership of trademarks at issue** ........................................ 7

**2. Defendant's use of Plaintiff's trademarks in commerce** ........................................ 8

**3. Likelihood of confusion** ........................................ 8

(a) Strength of the allegedly infringed marks ........................................ 10

(b) Proximity or relatedness of goods ........................................ 11

(c) Similarity of sight, sound, and meaning of marks ........................................ 11

(d) Degree to which marketing channels converge ........................................ 12

(e) Type of goods and degree of care consumers are likely to exercise in purchasing goods ........................................ 12

(f) Intent of the Defendant in selecting the allegedly infringing marks ........................................ 13

**C. Sum of Money at Stake** ........................................ 13

**1. Defendant's Profits for Trademark Infringement** ........................................ 14

**2. Treble Damages for Use of Counterfeit Marks** ........................................ 14

**3. Statutory Damages for Use of Counterfeit Marks** ........................................ 15

D. **No Possibility of Dispute Concerning Material Facts**....................15

E. **Default Not Due to Excusable Neglect**..........................................16

F. **Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's Right to Relief**..........................................................16

VI. **REMEDIES**..............................................................................16

A. **Treble Profits (15 U.S.C. § 1117(b))** ...........................................17

B. **Reasonable Attorneys' Fees**.....................................................17

C. **Injunctive Relief**....................................................................18

VII. **CONCLUSION**..........................................................................19

# TABLE OF AUTHORITIES

**CASES:**

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) .......... 9, 11, 13

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S.Ct. 1773 (2017) .......... 5

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999) .......... 6-7, 9

*E & J Gallo Winery v. Gallo Cattle,* 967 F.2d 1280 (9th Cir. 1992) .......... 8-9, 10, 11

*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986) .......... 5

*Fogerty v. Fantasy*, Inc., 510 U.S. 517 (1994) .......... 17

*In re Tuli*, 172 F.3d 707 (9th Cir. 1999) .......... 5

*Joujou Designs, Inc. v. Jojo Ligne Internationale*, 821 F.Supp. 1347 (N.D. Cal.1992) .......... 11

*M2 Software, Inc. v. Madacy Entertainment Corp.*, 421 F.3d 1073 (9th Cir. 2005) .......... 7

*Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137 (9th Cir. 2011) .......... 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) .......... 17

*One Indus. LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154 (9th Cir. 2009) .......... 9

*Penasquitos, Inc. v. Superior Court (Barbee)*, 53 Cal.3d 1180 (1991) .......... 5

*PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002) .......... 18

*Philip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494 (C.D. Cal. 2003) .......... 16

*Philip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067 (C.D. Cal. 2004) .......... 7, 9

*Stephen W. Boney, Inc. v. Boney Services, Inc.* 127 F.3d 821 (9th Cir. 1997) .......... 17

*SunEarth, Inc. v. Sun Earth Solar Power Co. Ltd.*
839 F.3d 1179 (9th Cir. 2016) .......... 18

*TeleVideo Systems, Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987) .......... 5

**STATUTES**:

15 U.S.C. § 1051 .......... 4
15 U.S.C. § 1114(1) .......... 7
15 U.S.C. § 1116(a) .......... 18
15 U.S.C. § 1117(a) .......... 14
15 U.S.C. § 1117(b) .......... 14, 17
15 U.S.C. § 1117(b)(1) .......... 17
15 U.S.C. § 1117(c)(1) .......... 15
15 U.S.C. § 1117(c)(2) .......... 15
28 U.S.C. § 1331 .......... 4
28 U.S.C. § 1338(a) .......... 4
28 U.S.C. § 1338(b) .......... 4
28 U.S.C. § 1367(a) .......... 4
50 U.S.C. App. § 521 .......... 1
*California Business & Professions Code* § 17200 .......... 4
*California Corporations Code* § 2010(a) .......... 5

**RULES**:

Fed. R. Civ. P. 54(c) .......... 16
Fed. R. Civ. P. 55(a) .......... 1
Fed. R. Civ. P. 55(b)(2) .......... 16
L.R. 11-6.1 .......... 21
L.R. 11-6.2 .......... 21
L.R. 55-3 .......... 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Bose Corporation ("Plaintiff") designs, develops, manufactures, and supports a wide range of audio products including headphones, earbuds, speakers, home theater systems, automotive music systems, and sunglass frames. Through extensive research and engineering, Bose has developed groundbreaking audio technology and innovative products, including its Bose® QuietComfort® noise cancelling headphones.

Plaintiff is seeking entry of a default judgment by the Court against Defendant Mega Fuller Corp. ("Mega Fuller") stemming from its unauthorized use of BOSE, ACOUSTIC NOISE CANCELLING, QUIETCOMFORT, QC, and SOUNDLINK registered trademarks online through eBay.com in connection with its advertisement for sale, sale and distribution of non-genuine speakers, headphones, earbuds and audio glasses bearing counterfeit BOSE marks.

## II. PROCEDURAL HISTORY

Plaintiff filed its Complaint for Damages ("Compl.") against Defendants Mega Fuller and Tianjing Cui ("Cui")[1] on March 11, 2026 [Dkt. 1]. *See* Declaration of Marcus F. Chaney ("Chaney Decl.") at ¶17. Pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), a party seeking default judgment must first have the clerk enter the default. Fed. R. Civ. P. 55(a). The Clerk entered default against Defendant Mega Fuller on June 12, 2026 [Dkt. 31] after failing to respond to Plaintiff's Complaint following substitute service of process through the California Secretary of State. *See* Chaney Decl. at ¶19.

Defendant Mega Fuller is not an infant or incompetent or in military service or otherwise exempted under the Servicemembers Civil Relief Act (50 U.S.C. App. § 521). *See* Chaney Decl. at ¶20. Notice of this motion for default

[1] Pursuant to a settlement reached between Plaintiff and Cui, the Court entered a stipulated permanent injunction against Cui on July 15, 2026 [Dkt. 36].

judgment by the Court was served upon Defendant Mega Fuller c/o Tianjing Cui on September 1, 2026. *See* Chaney Decl. at ¶21.

## III. PERTINENT FACTS

### A. <u>The Parties</u>

Plaintiff Bose owns, among others, the BOSE®, ACOUSTIC NOISE CANCELLING®, QUIETCOMFORT®, QC® and SOUNDLINK® trademarks used in connection with its audio headphones, earbuds, speakers and audio sunglasses. *See* Compl. at ¶18. Plaintiff sells its wide array of high-performance electronic audio products through its authorized retail stores and authorized dealers such as Best Buy, Walmart, and Target, and through its own website www.bose.com. *See* Compl. at ¶15; *see also* Chaney Decl. at ¶15, and **<u>Exhibit 17</u>**, thereto.

Defendant Mega Fuller is a dissolved California corporation. *See* Compl. at ¶3; *see also* Chaney Decl. at ¶12, and **<u>Exhibit 15</u>**, thereto. Cui is an individual and was the incorporator and former executive of the company. *See* Compl. at ¶4; *see also* Chaney Decl. at ¶¶2-3, and **<u>Exhibits 3 - 4</u>**, thereto. Plaintiff has never authorized or consented to the Defendant Mega Fuller's use of the BOSE trademarks in commerce, nor has it authorized Mega Fuller to manufacture, copy, sell, import, market, or distribute any BOSE®-branded product. *See* Compl. at ¶35.

### B. <u>Defendant's Infringing Sales on eBay.com and Plaintiff's Cease-and-Desist Notices</u>

On May 7, 2025, Plaintiff's investigator purchased what was advertised for sale on eBay.com by eBay User ID "ctjginger" as a "Bose SoundLink Mini II Special Edition Bluetooth Portable Speaker - Silver US" (eBay item number: 167445612308). *See* Chaney Decl. at ¶4, and **<u>Exhibits 5 - 6</u>**, thereto. The purported Bose speaker purchased from Defendant Mega Fuller through eBay.com was received via UPS GROUND SAVER with a return address of

13828 Mountain Avenue, Chino, CA 91710. *See* Chaney Decl. at ¶5, and **Exhibit 7**, thereto. The product purchased was inspected by Plaintiff to determine authenticity, and Plaintiff's inspection using security measures confirmed that the item sold by Defendant Mega Fuller was a counterfeit "Bose" branded product. *See* Compl. at ¶24. In addition to the accused infringing Bose speaker, Defendant Mega Fuller (eBay User ID "ctjginger") also advertised for sale and sold numerous additional Bose®-branded products on eBay.com using and bearing BOSE marks, including headphones, earbuds, audio sunglasses and charging cables. *See* Chaney Decl. at ¶6, and **Exhibit 8**, thereto.

On May 13, 2025, Plaintiff sent a cease-and-desist demand letter to Defendant Mega Fuller via certified mail putting it on notice of infringement in relation to the purported Bose speakers sold on eBay.com. *See* Chaney Decl. at ¶7, and **Exhibit 9**, thereto.

On October 3, 2025, Plaintiff's investigator captured Negative Feedback from the eBay Feedback Profile for eBay User ID "ctjginger." Negative feedback from buyers in connection with prior "Bose" sales transactions put Defendant Mega Fuller on notice that the products being sold were "fake," "broken," "bad," "knock offs." One particular feedback in connection with a Bose SoundSport Earbuds indicated: "**BUYER BEWARE Thes are cheap knock off's that don't work**." *See* Chaney Decl. at ¶8, and **Exhibit 10**, thereto.

Subsequently, Plaintiff's investigator purchased what was advertised for sale on eBay.com by eBay User ID "ctjginger" as a "Bose QuietComfort QC35 ii Bluetooth Wireless Over-Ear Headphones - Black Silver" (eBay item number: 166508143670). *See* Chaney Decl. at ¶9, and **Exhibits 11 - 12**, thereto. The purported Bose headphones purchased from Defendant Mega Fuller through eBay.com was received via USPS GROUND ADVANTAGE with a return address of 13828 Mountain Avenue, Chino, CA 91710. *See* Chaney Decl. at ¶10, and **Exhibit 13**, thereto. The product purchased was inspected by Plaintiff to

determine authenticity, and Plaintiff's inspection using security measures confirmed that the item sold by Defendant Mega Fuller was a counterfeit "Bose" branded product. *See* Compl. at ¶28.

On October 15, 2025, Plaintiff sent a second cease-and-desist demand letter to Defendant Mega Fuller via certified mail again putting it on notice of infringement in relation to the purported Bose speakers and headphones sold on eBay.com. *See* Chaney Decl. at ¶11, and **Exhibit 14**, thereto.

Defendant Mega Fuller completed the sale of a combined total of **7,236** units of infringing BOSE®-branded speakers (SoundLink® and Companion), headphones and earbuds (QuietComfort®, SoundSport, Sport, Sleepbuds™), audio sunglasses (Alto, Rondo, Soprano), and accessories through eBay.com between June 19, 2023, and May 21, 2025[2], resulting in **$707,005.40** USD in total sales ($754,994.74 less $46,782 in documented taxes and $1,207.34 in documented shipping fees). *See* Declaration of Eric Caron ("Caron Decl.") at ¶¶3-4, and **Exhibits 1 - 2**, thereto; *see also* Chaney Decl. at ¶16, and **Exhibit 18**, thereto.

## IV. SUBJECT MATTER AND PERSONAL JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), in that the case arises out of claims for trademark infringement, false designation of origin/unfair competition, and dilution under the Lanham Act (15 U.S.C. § 1051 *et seq.*), and supplemental jurisdiction for the claim arising from *California Business & Professions Code* § 17200 *et seq.* pursuant to 28 U.S.C. §§ 1367(a) and 1338(a) and (b).

/ / /

[2] Plaintiff attempted to subpoena complete sales records from eBay, Inc. for Defendant Mega Fuller but eBay responded with: "**Our records indicate that the user previously deleted their eBay account, and the records associated with that account have been removed in accordance with eBay's Privacy Policy**." *See* Chaney Decl. at ¶¶13-14, and **Exhibit 16**, thereto.

Before entering default judgment, a court must also determine whether it has jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty*., 137 S.Ct. 1773, 1780 (2017). For general jurisdiction, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id*.

The Court has general "all-purpose" personal jurisdiction over Defendant Mega Fuller because it is a California corporation with a principal place of business located in Los Angeles County, CA. Under California law, a California corporation that is dissolved continues to exist for the purpose of, among other things, defending actions against it. *California Corporations Code* § 2010(a)*; see also Penasquitos, Inc. v. Superior Court (Barbee*), 53 Cal.3d 1180, 1192 (1991)(Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business).

## V. ANALYSIS OF *EITEL* FACTORS

The Ninth Circuit has enumerated several factors the Court should consider in deciding whether to grant default judgment: the possibility of prejudice to the plaintiff, the merits of plaintiff's substantive claim, the sufficiency of the complaint, the sum of money at stake in the action, the possibility of a dispute concerning material facts, whether the default was due to excusable neglect, and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). In considering the above factors, the Court takes all factual allegations in the Complaint as true, ***except for those relating to damages***. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987) (emphasis added).

/ / /

Application of the facts in this matter to the *Eitel* factors warrant entry of a default judgment in favor of Plaintiff against Defendant Mega Fuller.

**A. <u>Prejudice to Plaintiff</u>**

In light of the fact that Defendant Mega Fuller has not defended itself in this action or otherwise responded to Plaintiff Bose's Complaint, absent a default judgment, Plaintiff will not be compensated for its losses and will accordingly be prejudiced. Moreover, if this Court fails to enter a default judgment against Defendant Mega Fuller, in light of its failure to defend this action, it will set a devastating precedent allowing willful infringers to avoid liability by effectively not responding to Plaintiff's claims further prejudicing Plaintiff's ability to enforce its intellectual property rights. Furthermore, in the absence of injunctive relief, Plaintiff may continue to suffer harm from violations of its trademark rights. Accordingly, this first *Eitel* factor, the possibility of prejudice to the Plaintiff, weighs in favor of granting a default judgment against Defendant Mega Fuller.

**B. <u>Plaintiff's Substantive Trademark Infringement Claim against Defendant is Meritorious & Sufficient</u>**

The second and third *Eitel* factors, concerning the merits of Plaintiff's substantive claims and the sufficiency of its Complaint, also weigh in favor of granting a default judgment in favor of Plaintiff against Defendant Mega Fuller. Plaintiff has alleged five (5) causes of action in its Complaint against Defendant, to wit: (1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. §1114 / *Lanham Act* § 32(a)]; (2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION [15 U.S.C. §1125(a)]; (3) TRADEMARK DILUTION [15 U.S.C. §1125(c)]; (4) UNFAIR BUSINESS PRACTICES [*CALIFORNIA BUSINESS & PROFESSIONS CODE* §17200][3]; and (5) DECLARATORY

---

[3] The essential elements of the infringement of trademark registration and false designation of origin claims are identical. *Brookfield Communications, Inc. v.*

RELIEF.

Plaintiff seeks a default judgment against Defendant Mega Fuller on its first cause of action for trademark infringement. To prove a claim of trademark infringement under Section 32(1) of the *Lanham Act*, a plaintiff must show that: it owns the trademark at issue, the defendant has used in commerce, without authorization, a copy, reproduction, counterfeit or colorable imitation of the plaintiff's mark in connection with the sale, distribution, or advertising of goods and services, and the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive. *See* 15 U.S.C. § 1114(1). Plaintiff alleges the facts necessary in its Complaint to prove trademark infringement by Defendant Mega Fuller.

**1. Plaintiff's ownership of trademarks at issue**

First, Plaintiff has adequately alleged and provided evidence of ownership of valid BOSE®, ACOUSTIC NOISE CANCELLING®, QUIETCOMFORT®, QC® and SOUNDLINK® marks. *See* Compl. at ¶18. A federal registration of a mark constitutes prima facie evidence of its validity and of plaintiff's exclusive rights to the mark. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

Plaintiff uses the BOSE marks in commerce in connection with its wide array of high-performance electronic audio products through its authorized retail stores and authorized dealers such as Best Buy, Walmart, and Target, and through

---

*West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Moreover, the 9th Circuit has consistently held that actions pursuant to *California Business & Professions Code* § 17200 are "substantially congruent" to claims made under the Lanham Act. *Philip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1072 (C.D. Cal. 2004). Therefore, analyzing the merits of the trademark infringement claim is sufficient because the standard of infringement, i.e., the likelihood of confusion, is essentially implicated in the remaining federal and state causes of action. *M2 Software, Inc. v. Madacy Entertainment Corp.*, 421 F.3d 1073, 1080 (9th Cir. 2005).

its own website www.bose.com. *See* Compl. at ¶15; *see also* Chaney Decl. at ¶15, and **<u>Exhibit 17</u>**, thereto.

**2. Defendant's use of Plaintiff's trademarks in commerce**

Second, the "use in commerce" requirement is satisfied as to Defendant Mega Fuller. Plaintiff has alleged and provided evidence to show Defendant's use of BOSE, ACOUSTIC NOISE CANCELLING, QUIETCOMFORT, QC and SOUNDLINK trademarks in online advertising and the advertisement for sale, sale, and distribution of counterfeit BOSE branded products to consumers through eBay.com. *See* Compl. at ¶¶40-41; *see also* Chaney Decl. at ¶¶4, 9, and **<u>Exhibits 5 - 6, 11 - 12</u>**, thereto. In addition to accused infringing BOSE SoundLink speakers and QuietComfort headphones, Defendant Mega Fuller (eBay User ID "ctjginger") also advertised for sale and sold numerous additional Bose®-branded products on eBay.com using and bearing BOSE marks, including audio speakers, headphones, earbuds, audio sunglasses and charging cables. *See* Chaney Decl. at ¶6, and **<u>Exhibit 8</u>**, thereto. Furthermore, Plaintiff has also confirmed that Defendant Mega Fuller's completed the sale of a combined total of **7,236** units of infringing BOSE®-branded audio speakers, headphones, earbuds, audio sunglasses, and accessories through eBay.com between June 19, 2023, and May 21, 2025, resulting in **$707,005.40** USD in total sales less documents taxes and shipping expenses. *See* Chaney Decl. at ¶16, and **<u>Exhibit 18</u>**, thereto. Defendant Mega Fuller sold more BOSE products outside of this limited time frame, but Plaintiff was unable to subpoena additional records from eBay, Inc. to confirm sapes before June 19, 2023 and/or after May 21, 2025. *See* Chaney Decl. at ¶¶13-14, and **<u>Exhibit 16</u>**, thereto.

**3. Likelihood of confusion**

The third element of trademark infringement is the likelihood of confusion, or whether the similarity of the marks is likely to confuse customers about the source of the products. *E & J Gallo Winery v. Gallo Cattle*, 967 F.2d 1280, 1290

(9th Cir. 1992). Although assessment of likelihood of confusion is typically a factual evaluation, "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination…because counterfeit marks are inherently confusion." *Philip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004). In light of the fact that this case deals with audio products bearing counterfeit BOSE marks that are identical to Plaintiff's registered BOSE marks, Defendant Mega Fuller's use of these inherently confusing marks is sufficient in and of itself to establish a likelihood of confusion. Be that as it may, application of the Ninth Circuit's step-by-step examination leads to the same conclusion.

Likelihood of confusion is analyzed using an eight-factor test established by the Ninth Circuit, i.e.: (i) strength of the allegedly infringed mark; (ii) proximity or relatedness of goods; (iii) similarity of sight, sound, and meaning of marks; (iv) degree to which marketing channels converge; (v) type of goods and degree of care consumers are likely to exercise in purchasing goods; (vi) intent of the defendant in selecting the allegedly infringing mark; (vii) evidence of actual confusion and likelihood that the parties will expand their product lines; and (viii) conclusion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). The *Sleekcraft* eight factor test for likelihood of confusion is pliant. Some factors are much more important than others, and the relative importance of each individual factor will be case-specific. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). "We have long cautioned that applying the *Sleekcraft* test is not like counting beans." *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1162 (9th Cir. 2009); *see also Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1145 (9th Cir. 2011) ("The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist.").

Applying this test to Plaintiff's BOSE marks and Defendant Mega Fuller's infringement thereof by offering for sale, selling, and distributing speakers and

headphones (among other products) bearing counterfeit BOSE marks to consumers should lead this Court to conclude that Plaintiff has successfully pled likelihood of confusion.

(a) Strength of the allegedly infringed marks

The strength of Plaintiff's BOSE marks is adequately alleged in the Complaint and weighs in favor of a likelihood of confusion. The strength of a mark is based on the distinctiveness of the mark and/or whether it has acquired secondary meaning, i.e., whether it has come to be associated with a good or service. *Gallo Cattle*, 967 F.2d at 1291.

For over 60 years, BOSE products and technologies have changed norms, defied trends, and delighted people all over the world. Since its founding in 1964, it has been Bose's philosophy—inspired by Dr. Amar G. Bose, a graduate of and professor at the Massachusetts Institute of Technology—to create what has not been done before. To that end, BOSE has always invested heavily in researching, developing, engineering, and designing proprietary technologies that separate it from its competitors. BOSE developed the first commercially-successful "surround sound" speaker in 1968, the first premium car audio system in 1983, the revolutionary Acoustic Wave Music System in 1984, the first active noise cancelling aviation headset in 1986, the first active noise cancelling consumer headphones in 1999, the first high-quality mobile speaker on the market in 2011, and the first commercially successful active noise cancelling wireless earbuds in 2020, just to name a few. *See* Compl. at ¶13.

Plaintiff has built its reputation with an uncompromising commitment to developing high-performance audio products that create exceptional audio quality and sound. Plaintiff has spent substantial resources and effort to inform customers of the benefits of Plaintiff's products and to develop consumer recognition and awareness of its trademarks in the United States and the world. Through extensive use of the Plaintiff's Marks, including the singular famous BOSE® trademark,

Plaintiff has built and developed substantial goodwill and recognition in their entire product line throughout the State of California, the United States, and the world. *See* Compl. at ¶16.

The length of time that Plaintiff has used its marks in the marketplace further establishes the strength of the mark – since as early as 1967 for the BOSE brand. *See* Compl. at ¶18. Thus, the famous status of the BOSE marks, coupled with the duration of their use in the marketplace, establishes that they are strong marks, which makes consumer confusion more likely. *Joujou Designs, Inc. v. Jojo Ligne Internationale*, 821 F. Supp. 1347, 1353-1354 (N.D. Cal. 1992).

(b) <u>Proximity or relatedness of goods</u>

The second factor, the proximity or relatedness of Plaintiff's authentic BOSE products, and Defendant Mega Fuller's infringing and counterfeit versions thereof, also point toward a likelihood of confusion. The more related or complementary goods are, the higher the danger of consumer confusion. *Gallo Cattle*, 967 F.2d at 1291. Here, the infringed marks appear on goods identical to the type of goods protected by Plaintiff's registered trademarks – audio products (speakers, headphones, earbuds, audio glasses) and related BOSE accessories. *See* Chaney Decl. at ¶¶5, 10, and **<u>Exhibits 7, 13</u>**, thereto.

(c) <u>Similarity of sight, sound, and meaning of marks</u>

The third factor, similarity of sight, sound, and meaning of the marks also supports a finding of likelihood of confusion. Where, as here, the products bearing the disputed marks are identical, even less similarity is required to demonstrate a likelihood of confusion. *Sleekcraft*, 599 F.2d at 350. Given this low standard, Plaintiff has easily and adequately demonstrated that the marks are similar. Marks should be compared based on their sight, sound, and meaning as they appear in the marketplace, and similarities between marks should be weighed more heavily than differences. *Sleekcraft*, 599 F.2d at 350.

/ / /

Plaintiff identified its applicable registered trademarks in the Complaint, and in support of this Motion. *See* Compl. at ¶18. Plaintiff has also provided evidence of counterfeit BOSE branded speakers and headphones advertised for sale by Defendant Mega Fuller using the BOSE, SOUNDLINK, and QUIETCOMFORT registered marks, and sold and distributed by Defendant bearing counterfeit BOSE and SOUNDLINK marks. Under the lower standard for marks used for identical products, Defendant Mega Fuller's use of Plaintiff's registered marks is sufficiently similar in sight, sound, and meaning.

(d) Degree to which marketing channels converge

In considering the marketing channels used by Plaintiff and Defendant Mega Fuller, the online channels largely overlap, which makes consumer confusion more likely. Plaintiff advertises for sale and sells BOSE products through its authorized retail stores and authorized dealers such as Best Buy, Walmart, and Target, and through its own website www.bose.com. *See* Compl. at ¶15; *see also* Chaney Decl. at ¶15, and **Exhibit 17**, thereto. Defendant Mega Fuller offered for sale, sold and distributed counterfeit BOSE-branded speakers, headphones, earbuds, audio glasses and accessories online through eBay.com thus reaching the same type of potential online consumer as Plaintiff who may be searching for products online.

(e) Type of goods and degree of care consumers are likely to exercise in purchasing goods

The presumption that buyers of expensive products exercise greater care is inapplicable here. Defendant Mega Fuller sold the accused products at issue at relatively inexpensive prices of no more than $120.00 USD, inclusive of taxes. *See* Chaney Decl. at ¶16, and **Exhibit 18**, thereto. Plaintiff's genuine products, most similar to the counterfeit versions sold by Defendant, range in price from $129.00 to 379.00 USD. *See* Chaney Decl. at ¶15, and **Exhibit 17**, thereto.

/ / /

(f) Intent of the Defendant in selecting the allegedly infringing marks

Though bad intent is not necessary to demonstrate a likelihood of confusion, where the plaintiff establishes that defendant knowingly used an infringing mark, there is a presumption that the infringer will accomplish his purpose, and the public will be deceived. *Sleekcraft*, 599 F.2d at 354. Defendant Mega Fuller's failure to respond to Plaintiff's pre-litigation cease-and-desist demands and Complaint, which include allegations of bad faith, intent, and willful conduct is indicative of Defendant's knowledge regarding the counterfeit nature of the automobile parts and accessories at issue. Defendant continued to advertise for sale and sell accused BOSE-branded products on eBay.com after being put on notice of infringement by Plaintiff. In addition, negative feedback left from other buyers of purported BOSE products from Defendant Mega Fuller through eBay.com (as far back as October 2025) would have also put it on notice that it was dealing in non-genuine Bose products. *See* Chaney Decl. at ¶8, and **Exhibit 10**, thereto.

Taking all the allegations of the Complaint as true, Plaintiff has adequately pled and demonstrated that its BOSE marks would likely be confused with Defendant Mega Fuller's unauthorized use thereof on counterfeit versions of audio speakers, headphones, earbuds, audio glasses and accessories advertised, sold, and distributed by Defendant through eBay.com.

**C. Sum of Money at Stake**

The prevailing party in an action for willful trademark infringement is entitled to, *inter alia*, defendant's profits, enhanced treble damages for use of counterfeit marks, and reasonable attorney's fees in exceptional cases. In the alternative, the prevailing party is entitled to statutory damages in cases involving use of counterfeit marks in lieu of profits and/or treble damages.

/ / /

Plaintiff has alleged in its Complaint and in support of this Motion that Defendant Mega Fuller willfully infringed upon the BOSE trademarks by advertising for sale, selling and distributing audio speakers, headphones, earbuds, audio glasses and accessories to consumers online bearing counterfeit BOSE marks. Defendant Mega Fuller failed to respond to these serious allegations despite notice thereof.

**1. Defendant's Profits for Trademark Infringement**

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled to recover defendant's profits, any damages sustained by the plaintiff, and the costs of the action. *See* 15 U.S.C. § 1117(a). In assessing profits, the plaintiff shall be required to prove defendant's sales only. *Id.* Here, Plaintiff has submitted admissible evidence obtained from eBay, Inc., prior to litigation, to show that Defendant Mega Fuller completed the sale of a combined total of **7,236** units of infringing BOSE®-branded products through eBay.com between June 19, 2023, and May 21, 2025, resulting in **$707,005.40** USD in total sales (after deducting $1,207.34 in documented shipping fees and an additional $46,782.00 in taxes). *See* Caron Decl. at ¶¶3-4, and **Exhibits 1 - 2**, thereto; *see also* Chaney Decl. at ¶16, and **Exhibit 18**, thereto.

**2. Treble Damages for Use of Counterfeit Marks**

The *Lanham Act* also gives the Court discretion to enter judgment for three times defendant's profits in a case involving use of a counterfeit mark. 15 U.S.C. 1117(b). Based upon Defendant Mega Fuller's use of counterfeit BOSE marks in relation to audio speakers, headphones, earbuds, audio glasses and accessories, this case presents the Court with discretion to award three times Defendant's sales to Plaintiff in the amount of $2,121,016.20 USD (three times $707,005.40 USD) for intentionally using counterfeit marks. Treble damages using this formula is

particular suitable for this case given the fact that Plaintiff only has a limited picture of Defendant Mega Fuller's total sales of purported BOSE products. The $707,005.40 revenue figure is limited to Defendant's sales between June 19, 2023, and May 21, 2025 **only**, and Plaintiff has presented additional evidence to show that Defendant's sales of accused BOSE products continued after May 21, 2025. *See* Chaney Decl. at ¶9, and **Exhibits 11 - 12**, thereto.

**3. Statutory Damages for Use of Counterfeit Marks**

In the alternative, given Plaintiff's limited ability to prove Defendant Mega Fuller's sales through third-party discovery and in light of Defendant's default, this case also presents the Court with the discretion to award Plaintiff statutory damages for use of counterfeit BOSE marks.

The *Lanham Act* provides for statutory damages for use of counterfeit marks. "In a case involving the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (1), an award of statutory damages…not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. §1117(c)(1). "If the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. 15 U.S.C. §1117(c)(2).

**D. <u>No Possibility of Dispute Concerning Material Facts</u>**

There is no information before the Court concerning a possible dispute of material facts because Defendant Mega Fuller failed to file a responsive pleading to Plaintiff's Complaint after substitute service of process through the California Secretary of State. Even prior to substitute service of process, counsel for Defendant Mega Fuller contacted Plaintiff's counsel shortly after the filing of the

Complaint. *See* Chaney Decl. at ¶18, and **Exhibit 19**, thereto. Moreover, Defendant's former corporate officer, Cui, responded to the Complaint and stipulated to the Court's entry of a permanent injunction against her [Dkt. 36].

**E. Default Not Due to Excusable Neglect**

Defendant Mega Fuller's default in this matter was not due to excusable neglect. Prior to the filing of Plaintiff's Complaint, Plaintiff put Defendant Mega Fuller on written notice of infringement on two separate occasions, and it was not until Plaintiff filed its Complaint against Defendant Mega Fuller that the company attempted to dissolve itself with the California Secretary of State. *See* Chaney Decl. at ¶12, and **Exhibit 15**, thereto. Efforts to settlement Plaintiff's claims against Defendant Mega Fuller were unsuccessful. *See* Chaney Decl. at ¶18, and **Exhibit 19**, thereto.

**F. Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's Right to Relief**

Any policy in favor of deciding cases on the merits does not outweigh Plaintiff's rights to relief in this matter. Defendant Mega Fuller had every opportunity to defend itself in this action, or otherwise respond to Plaintiff's Complaint, despite notice thereof. Favoring this policy of deciding cases on the merits in the case before this Court would effectively condone and reward a defendant who refuses to appear in order to decide the case on the merits.

## VI. REMEDIES

Plaintiff is required to prove all damages sought in the Complaint. Fed. R. Civ. P. 54(c); *see also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). In determining damages, a court can rely on the declarations submitted by plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Plaintiff's burden in "proving up" damages is relatively lenient. *Philip Morris,* 219 F.R.D. at 498. In this case, Plaintiff seeks treble sales for trademark infringement, reasonable attorney's fees pursuant to L.R. 55-3, and a

permanent injunction against Defendant Mega Fuller prohibiting its continued and/or future infringing uses of Plaintiff's BOSE, ACOUSTIC NOISE CANCELLING, QUIETCOMFORT, QC and SOUNDLINK marks, and dealings in counterfeit BOSE audio products and accessories.

**A. Treble Profits (15 U.S.C. § 1117(b))**

Defendant Mega Fuller willfully used BOSE trademarks to advertise, sell and distribute audio speakers, headphones, earbuds, audio glasses and related accessories to consumers bearing counterfeit BOSE marks through eBay.com. In addition, Plaintiff has shown that Defendant's sales amounted to no less than $707,005.40 USD in revenue (limited in time to sales between June 19, 2023, and May 21, 2025). It is within this Court's discretion to award Plaintiff up to three times Defendant's profits together with a reasonable attorney's fee under 15 U.S.C. § 1117(b)(1). Plaintiff seeks an award from the Court of $2,121,016.20 USD in treble profits for trademark infringement and counterfeiting under 15 U.S.C. § 1117(b).

**B. Reasonable Attorneys' Fees**

Reasonable attorney fees are awardable to the prevailing party in a trademark infringement action under 15 U.S.C. §1117(b); *see also Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997)("a finding that the losing party has acted in bad faith may provide evidence that the case is exceptional" but "other exceptional circumstances may [also] warrant a fee award.").

The Ninth Circuit recently held that district courts analyzing requests for attorney fees under the *Lanham Act* should follow the holding in O*ctane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) and examine the totality of the circumstances to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), and using a

preponderance of the evidence standard. *SunEarth, Inc. v. Sun Earth Solar Power Co. Ltd*., 839 F.3d 1179 (9th Cir. 2016). This decision is widely viewed as an easing of the standards for receiving an award of attorney fees in trademark cases. Looking at the "totality of the circumstances" in this case, Plaintiff has met the "exceptional" threshold for an award of attorney's fees under the Lanham Act given Defendant Mega Fuller's sale and distribution of electronic audio products bearing counterfeit BOSE trademarks.

Under Local Rule 55-3, attorneys' fees shall be calculated according to a fee schedule based upon the amount of the default judgment absent costs. L.R. 55-3. Pursuant to the Local Rules, Plaintiff is entitled to $5,600.00 in attorneys' fees plus 2% of the amount awarded over $100,000 totaling $46,020.32. *See* Chaney Decl. at ¶22.

**C. <u>Injunctive Relief</u>**

The Lanham Act gives the Court "[p]ower to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a); *see also PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177-78 (C.D. Cal. 2002). Plaintiff seeks an injunction broadly covering five items listed below as they relate to prevention of future infringing activity by Defendant Mega Fuller. Plaintiff is entitled to a permanent injunction against Defendant Mega Fuller pursuant to 15 U.S.C. §1116(a) as follows:

1) copying, manufacturing, importing, exporting, purchasing, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any of Plaintiff's trademarks, including but not limited to, the registered **BOSE**® (Reg. Nos. 991271; 3863254; 5423514; 829402; and 7517625); **ACOUSTIC NOISE CANCELLING**® (Reg. No. 2096548), **QUIETCOMFORT**® (Reg. No. 2539951); **QC**® (Reg. No. 3355350); and/or **SOUNDLINK**® (Reg. No. 3716864) trademarks (collectively

hereinafter "BOSE's Trademarks"), and/or any intellectual property that is confusingly or substantially similar to, or that constitutes a colorable imitation of, any of BOSE's Trademarks, whether such use is as, on, in or in connection with any trademark, service mark, trade name, logo, design, Internet use, website, domain name, metatags, advertising, promotions, solicitations, commercial exploitation, television, web-based or any other program, or any product or service, or otherwise;

2) advertising or displaying images and/or photographs of non-genuine BOSE audio products and/or accessories with BOSE®, ACOUSTIC NOISE CANCELLING®, QUIETCOMFORT®, QC® and/or SOUNDLINK® trademarks;

3) selling non-genuine BOSE products and/or accessories;

4) using BOSE's Trademarks, including but not limited to the BOSE®, ACOUSTIC NOISE CANCELLING®, QUIETCOMFORT®, QC® and/or SOUNDLINK® trademarks in advertising to suggest that non-genuine BOSE products being advertised are sponsored by, endorsed by, or are otherwise affiliated with BOSE and/or advertising non-genuine BOSE audio products using descriptions that imply that the products are genuine BOSE products; and

5) performing or allowing others employed by or representing Defendant, or under Defendant's control, to perform any act or thing which is likely to injure Plaintiff, BOSE's Trademarks, including but not limited to the BOSE®, ACOUSTIC NOISE CANCELLING®, QUIETCOMFORT®, QC® and/or SOUNDLINK® trademarks, and/or Plaintiff's business reputation or goodwill, including making disparaging, negative, or critical comments regarding Plaintiff or its products.

## VII. CONCLUSION

For the foregoing reasons and in the manner set forth above, the Court should grant Plaintiff Bose Corporation's Motion for Entry of Default Judgment

by Court against Defendant Mega Fuller Corp. for treble profits totaling no less than $2,121,016.20 USD, along with reasonable attorneys' fees totaling $46,020.32 USD pursuant to L.R. 55-3, and the requested injunctive relief.

DATED: September 1, 2026 CRITERION COUNSEL, LAW CORPORATION

By: __/s/_Marcus F. Chaney_______
Marcus F. Chaney, Esq.

Attorneys for Plaintiff
BOSE CORPORATION

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

The undersigned, counsel of record for Plaintiff Bose Corporation, certifies that this brief contains 5,553 words, which complies with the work limit of L.R. 11-6.1.

By: __/s/_Marcus F. Chaney_______
Marcus F. Chaney

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Criterion Counsel, Law Corporation, 6355 Topanga Canyon Blvd., Suite 326, Woodland Hills, California 91367. On September 1, 2026, the following document was served in the manner and to the recipient(s) set forth below:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT BY THE COURT AGAINST DEFENDANT MEGA FULLER CORP.**

☑ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

TIANJING CUI
101 W MISSION BLVD STE 110 #144
POMONA, CA 91766

☑ BY E-MAIL / ELECTRONIC DELIVERY - by causing such document(s) to be transmitted by electronic.

E-mail: CTIANJING19@GMAIL.COM
E-mail: YLC@DETERNAL.COM

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I am a member of the bar of this court at whose direction this service was made.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2026 at Woodland Hills, California.

/s/
Marcus F. Chaney